NO. 07-02-0334-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



APRIL 28, 2003


______________________________



IN THE INTEREST OF SILAS J. HURD & MONIQUE C. HURD, MINOR CHILDREN


 _______________________________


FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 51098-D; HON. DON EMERSON, PRESIDING


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Through this appeal, we are asked by the Office of the Attorney General of Texas
(the State) to determine the rate at which interest accrues on child support payments
becoming delinquent before January 1, 2002. The trial court ordered that it accrue at the
rate of six percent per annum. The State argues that the rate should be 12 percent. We
agree with the State and reverse, in part, the order of the trial court adopting the master's
report.

Background


 According to the record before us, Beverly Ann Hurd and Silas Hurd were divorced
in November of 1994. They had two children at the time, and Silas was ordered to pay
Beverly $165 per month in child support. He did not, and because of that the State moved
to enforce the child support order on March 23, 2001. 

 A hearing was had on the motion, and the trial court entered findings of fact and
conclusions of law. It found that Silas owed $9,866.48 in delinquent child support. This
sum represented accumulated arrearage from December 1, 1994, through March 13, 2002. 
The trial court also determined that interest on the entire delinquency accrued at six
percent per annum "pursuant to Section 157.265, Texas Family Code." Finally, the sum
of $11,556.95 was awarded the State. Of that amount, $9,866.48 represented delinquent
child support and $1,690.47 accrued interest. 

Authority


 Prior to the Texas Legislature convening in 2001, the statute dictated that interest
accrued

 on the portion of delinquent child support that is greater than the amount 

 of the monthly periodic support obligation at the rate of 12 percent simple 

 interest per year from the date the support is delinquent until the date the 

 support is paid or the arrearages are confirmed and reduced to money 

 judgment. 

Tex. Fam. Code Ann. §157.265(a). However, during the 2001 session, the legislature
amended the provision by reducing the rate from 12 percent to six. Tex. Fam. Code Ann.
§157.265(a) (Vernon 2002). Furthermore, in the enabling legislation accompanying the
amendment, it directed that 1) the amendment was to become effective on January 1, 2002
and 2) the change applied "only to . . . a child support payment that [became] due on or
after the effective date of this Act . . . and . . . unpaid child support that became due before
the effective date of this Act and for which a court has not confirmed the amount of
arrearages and rendered a money judgment." Act of May 25, 2001, 77th Leg., R.S., ch.
1491, §3, 2001 Tex. Gen. Laws 4995. However, a "money judgment for child support
rendered before the effective date of this Act [was to be] governed by the law in effect on
the date the judgment was rendered, and the former law [was] continued in effect for that
purpose," according to the same body. Id. This amendment caused the dispute now
before us. Simply put, the State argues that the change from 12 to six percent did not
apply retroactively to reduce the amount of interest which had accrued before January 1,
2002. Silas contends otherwise. Who is right depends upon application of various
concepts of statutory construction. 

 The first such rule of construction obligates us to presume that statutes and
amendments thereto operate prospectively "unless expressly made retrospective." Tex.
Gov't Code Ann. §311.022 (Vernon 1998); Reames v. Police Officers' Pension Bd., 928
S.W.2d 628, 631 (Tex. App.--Houston [14th Dist.] 1996, no writ). Next, a statute is to be
applied retroactively only if it appears by fair implication from language used that it was
the intention of the legislature to make it applicable to both past and future transactions. 
State v. Humble Oil & Refining Co., 141 Tex. 40, 169 S.W.2d 707, 708-09 (1943); Rice v.
Louis A. Williams & Assoc., Inc., 86 S.W.3d 329, 335 (Tex. App.--Texarkana 2002, pet.
denied). Third, we must also presume that the legislature intended to comply with the
United States and Texas Constitutions. Tex. Gov't Code Ann. §311.021(1) (Vernon 1998).
Consequently, interpretations of an edict which render it constitutionally infirm must be
avoided. Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d
618, 629 (Tex. 1996). For instance, a statute cannot be read as depriving one of a vested
right. Id. at 633. With this said, we turn to the dispute before us.





Application of Authority


 In reducing the interest rate to six percent, the legislature did not simply state that
the modification became effective on January 1, 2002. It added that the change applied
to "unpaid child support that became due before the effective date of this Act and for which
a court has not confirmed the amount of arrearages and rendered a money judgment." In
other words, the legislature stated that though the Act would become effective on January
1, 2002, the reduction from 12 to six percent nonetheless would apply to arrearages in
existence before January 1, 2002, which had yet to be confirmed and reduced to a money
judgment. In so reading the proviso and affording the words contained therein their
common meaning, see Tex. Gov't Code Ann. §311.011(a) (Vernon 1998) (stating that
words and phrases contained in a statute shall be read in context and construed according
to the rules of grammar and common usage), one cannot but read it as fairly implying that
the reduction was to apply to both past and future arrearages as long as they had yet to
be confirmed and reduced to an actual money judgment. Simply put, if the change is to
affect arrearages that accrued before the Act became effective, then the change must have
retrospective affect. (1) 

 Yet, our analysis is not over for another statutory provision must be taken into
consideration. It is found at §157.261(a) of the Family Code and states that a "child
support payment not timely made constitutes a final judgment for the amount due and
owing, including interest as provided in this chapter." Tex. Fam. Code Ann. §157.261(a)
(Vernon 2002). Through it, the legislature has categorized the status of the delinquent
payment as delinquent and due at the instant it becomes unpaid and memorialized the
liability, including interest thereon, in a final judgment. (2) 

 Having categorized the sum due, including interest, as a final judgment, the
legislature has also effectively vested the beneficiary of the support payment with the right
to receive the amount due, including interest, at the instant it went unpaid. Simply put, if
final relief has not been granted to one on the enforcement of a demand before
modification of the law upon which it is based, then the right to the demand is not vested. 
Walls v. First State Bank, 900 S.W.2d 117, 122 (Tex. App.--Amarillo 1995, writ denied).
However, when the demand has been merged into and recognized by a final judgment,
then it becomes a vested right which cannot be divested through retroactive application
of a law. Id. So, because the right to delinquent child support payments, including interest
thereon, is incorporated into a final judgment through legislative fiat, then, logically, the
right to the payment and interest thereon vests at the instant the delinquency arises. And,
being vested, the right cannot be denied via our interpretation of another statute. 

 So, we must avoid construing the amendment to §157.265(a) in a manner that
divests a beneficiary of delinquent child support of its vested right to receive the arrearage
and interest thereon encompassed by the final judgment arising via §157.261(a). And, to
construe the amendment to be retroactive would be to effectively divest the beneficiary of
a portion of his entitlement encompassed by the final judgment. This is so because
reducing the interest which already 1) had accrued at 12 percent and 2) had been
encompassed within a final judgment via §157.261(a) would be to divest the beneficiary
of the payment (or judgment creditor) of a portion of his vested right. Consequently, the
amendment to §157.265(a) cannot be interpreted as retroactive. (3) 

 Finally, the record at bar discloses that a significant portion of the arrearage due
from Silas accrued before the effective date of the amendment to §157.265(a). 
Additionally, in calculating interest on the entire sum (which had effectively been reduced
to a final judgment via §157.261(a) and thereby constituted a vested right) the trial court
utilized a rate of six percent. It did not differentiate between unpaid support which accrued
before the amendment to §157.265(a) became effective and unpaid support accruing
thereafter. Given our construction of the amendment to that statute and our conclusion
that its effect is not retrospective, the trial court was obligated to use a rate of 12 percent
when calculating the interest accruing upon the pre-January 1, 2002 delinquency. Thus,
it erred.

 We reverse the April 30, 2002 order approving and adopting the master's report and
remand the cause for further proceedings.


 


 Brian Quinn

 Justice 

 
1. We note that the court in In re A.J.R., 97 S.W.3d 833 (Tex. App.--Dallas 2003, no pet. h.) held
differently. It concluded that "unpaid child support obligations that have not been confirmed and reduced
to judgment as of January 1, 2002 are subject to the twelve percent interest rate until January 1, 2002. On
that date, however, interest begins accruing on those unpaid obligations at the new six percent rate." Id. at
835. The reason for this was because "[t]here is nothing to suggest that the legislature intended the changed
rate to apply retroactively." Id. In reaching that conclusion, the court did not mention the passage in the
enabling legislation stating that the change "applies to . . . unpaid child support that became due before the
effective date of this Act and for which a court has not confirmed the amount of arrearages and rendered
a money judgment." Nor did it explain why that language failed to evince an intent to apply the changes
retroactively. Nor did the court attempt to explain what it believed that passage to mean. Instead, it read
into the enabling legislation wording that divided unpaid child support into different categories, those
categories being unpaid support that accrued before January 1, 2002, and unpaid support that accrued after
January 1st. The former would accrue interest at 12 percent and the latter at six, according to the court. 
Yet, the legislators did not themselves make that distinction; indeed, they expressly rejected it by stating that
the new rate applied to both "child support payment[s] that become due on or after the effective date of [the]
Act and . . . unpaid support that became due before the effective date . . . ." Act of May 25, 2001, 77th Leg.,
R.S., ch. 1491, §3, 2001 Tex. Gen. Laws 4995. In short, it appears that the court in A.J.R. gave effect to
merely that portion of the enabling legislation stating that the change affected "child support . . . that
becomes due on or after the effective date of [the] Act." Thus, we choose not to follow the holding and
instead conclude that the reduction was intended to apply to support payments becoming delinquent after
January 1, 2002, as well as support that became delinquent prior thereto and had yet to be confirmed and
incorporated into a monetary judgment.
2. We realize that other sections of the Family Code provide for actually confirming the amount of
arrearage which the legislature has already categorized as a "final judgment" and reducing that "final
judgment" into a "cumulative money judgment". Tex. Fam. Code Ann. §157.263(a) (Vernon 2002). Yet,
because the legislature expressly decreed that the delinquency constitutes a "final judgment" at the time the
payment becomes delinquent, we are bound by its categorization for purposes of this appeal. See Tex.
Gov't Code Ann. §311.011(b) (Vernon 1998) (stating that words and phrases that have acquired a technical
or particular meaning shall be construed accordingly). We do not address, however, whether in using the
term "final judgment" the legislature sought to perform the inherently judicial function of adjudicating a
dispute. It may well be that the lawmakers simply intended to cloak the unpaid child support payment and
interest on it with indicia of finality given that the trial court previously ordered that the amounts be paid as
they accrue. 
3. So, while we disagree with the reasoning of the court in In re A.J.R., we nonetheless arrive at the
same result.